UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE LEONARD, #42080-039,

        Petitioner,

v.                                    Case No. 16-14196

DANIEL J. EBBERT                Paul D. Borman
and BILL SCHUETTE,            United States District Judge

        Respondents.
_____/

## OPINION AND ORDER
## GRANTING THE STATE'S MOTION TO DISMISS [9],
## DENYING PETITIONER'S MOTION TO GRANT HIS PETITION [11],
## DISMISSING THE HABEAS CORPUS PETITION [1],
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITTY,
## AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Maurice Leonard has filed a *pro se* petition for the writ of habeas corpus

under 28 U.S.C. § 2254 and a motion to grant his petition. The State has moved to

dismiss the petition on the ground that Petitioner failed to comply with the applicable

one-year statute of limitations. The Court agrees that the habeas petition is untimely.

The Court also finds that Petitioner's underlying grounds for relief lack merit.

Accordingly, the State's motion to dismiss the petition (ECF No. 9) is granted,

Petitioner's motion to grant the petition (ECF No. 11) is denied, and the habeas petition

(ECF No. 1) is dismissed with prejudice.

# I. Background

In 2007, Petitioner was charged with state and federal crimes involving a special agent employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). The Government summarized the facts leading to the charges as follows:

> On October 16, 2007, ATF S/A Joe Nether and Task Force Officer Talbert, acting in an undercover capacity, met with defendant Leonard at 18**9 Bentler [in Detroit, Michigan], for the purpose of purchasing narcotics. Defendant Leonard directed S/A Nether, who was equipped with an electronic recording device, to Plymouth and Greenfield streets to complete the narcotics transaction. S/A Nether gave defendant Leonard $750 of pre-recorded government funds . . . which defendant Leonard exchanged with co-defendant McKinney for crack cocaine. Defendant Leonard gave the crack cocaine to S/A Nether. Defendant Leonard lured S/A Nether back to and inside the Bentler address under the ruse of having additional narcotics for purchase, to wit: marijuana, and to weigh the recently purchased crack cocaine.
>
> Upon following defendant Leonard inside the premises, a black male later identified as Derrick Carpenter placed a gun to the back of S/A Nether's head and ordered him onto the ground. S/A Nether immediately struggled with the gunman for control of the gun. During the struggle, defendant Leonard and Williams kicked and punched the agent in an effort to prevent him from gaining control of Carpenter's gun. The agent continuously screamed for help during this encounter until supporting officers forced entry into the location. The three assailants fled the location and Carpenter was killed by a responding agent when he did not drop his weapon which was leveled at an officer. Leonard and Williams were apprehended outside the premises. The agent sustained bruises, contusions, and dental damage.

*United States v. Leonard*, No. 2:07-cr-20545-AJT-MKM-2 (E.D. Mich. July 22, 2008) (Government's Sentencing Memorandum, pp. 1-2, ECF No. 24).

## A. The Federal Case

On April 1, 2008, Petitioner pleaded guilty in the federal case to the following crimes: distribution of more than five grams of crack cocaine, 21 U.S.C. § 841(a); aiding

and abetting the distribution of more than five grams of crack cocaine, 18 U.S.C. § 2 and 21 U.S.C. § 841(a); aiding and abetting the assault of a federal agent, 18 U.S.C. §§ 2 and 111(b); and aiding and abetting the use of a firearm during and in relation to a crime of violence, 18 U.S.C. §§ 2 and 924(c). On July 23, 2008, another judge in this District sentenced Petitioner to three concurrent terms of ten years in prison for the cocaine and assault convictions and a consecutive term of seven years for the firearm conviction. *See United States v. Leonard,* No. 2-07-cv-20545-AJT-MKM-2 (E.D. Mich. July 23, 2008).

### B. The State Case

This case concerns Petitioner's state convictions. On April 2, 2008, Petitioner pleaded guilty in Wayne County Circuit Court to: assault with intent to rob while armed, Mich. Comp. Laws § 750.89; assault with intent to commit murder, Mich. Comp. Laws § 750.83; delivery of less than 50 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iv); conspiracy to commit armed robbery, Mich. Comp. Laws § 750.157a; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; resisting and obstructing a police officer, Mich. Comp. Laws § 750.479; and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.[1] Petitioner pleaded guilty with the understanding that he would be sentenced in the state case after he was sentenced in the federal case, that his state and federal sentences would run concurrently with each

---

[1] A charge of armed robbery was dismissed during the preliminary examination in state district court. *See* Register of Actions for Case No. 07-024234-01-FC, Third Judicial Circuit Court of Michigan, p. 3 (ECF No. 10-1). Two additional counts charging Petitioner with assault with intent to do great bodily harm less than murder and assault with a dangerous weapon were dismissed by the state circuit court. *See id*., p. 4.

other, and that he would serve his state sentence in federal prison.  *See* Plea Tr., pp. 3-4, 6-7 (ECF No. 10-3); Sentence Tr., p. 23 (ECF No. 10-4).

On August 6, 2008, the state trial court sentenced Petitioner to two years in prison for the felony-firearm conviction, followed by concurrent prison terms of thirty to sixty years for the two assault convictions, five to twenty years for the cocaine conviction, two to five years for the conspiracy and felon-in-possession convictions, and one to four years for the resisting-and-obstructing conviction.  The court ordered all the state sentences to run concurrently with Petitioner's federal sentence.  The court also stated that Petitioner could serve the first seventeen years of his state sentence in federal prison.  *See* Sentence Tr., pp. 29-31 (ECF No. 10-4).

Petitioner did not pursue a direct appeal from his convictions and sentences, and on August 6, 2009, the one-year deadline for filing an appeal expired.  *See* Mich. Ct. Rule. 7.205(G)(3).[2]  On April 9, 2013, Petitioner, through counsel, filed a motion for relief from judgment in the state trial court.  *See* Mot. for Relief from J. (ECF No. 10-6). He claimed that he was entitled to withdraw his guilty plea because his trial attorney pressured or misled him into pleading guilty.  According to Petitioner, his attorney told him that, if he pleaded guilty, he would be sentenced at the low end of the sentencing guidelines, which the attorney calculated at fourteen years, three months.

---

[2] **Error! Main Document Only.**The current deadline for filing a late appeal in the Michigan Court of Appeals is six months, Mich. Ct. R. 7.205(G)(3), but in 2008, the deadline was twelve months.  *See* Rule 7.205(G)(3), Staff Comment to the June 2011 Amendment (stating that "[t]he amendment of MCR 7.205 reduces the late appeal period from 12 months to 6 months").

Petitioner also asserted that he was entitled to post-conviction relief under

Michael Court Rule 6.508(D)[3] because no court had ruled on his claims, and he was

---

[3] This rule provides that,

> [t]he defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion
>
> (1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;
>
> (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;
>
> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
>> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>>
>> (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,
>>> . . . .
>>>
>>> (ii) in a conviction entered on a plea of guilty, guilty but mentally ill, or nolo contendere, the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand. . . .
>
> The court may waive the "good cause" requirement of subrule (D)(3)(A) if it concludes that there is a significant possibility that the defendant is innocent of the crime.

precluded from raising the claims on direct appeal due to the expiration of the deadline for filing an appeal. Counsel for Petitioner explained in the motion that, although he was appointed to represent Petitioner in 2009, he was unable to communicate with Petitioner until years later, when he discovered that Petitioner was being held in a federal institution in West Virginia. Counsel further stated that, although he subsequently attempted to maintain contact with Petitioner, he was unable to do so because Petitioner was transferred to other federal facilities.

The state trial court denied Petitioner's motion after concluding that there was no merit in Petitioner's assertions regarding the withdrawal and voluntariness of his guilty plea, and that no miscarriage of justice occurred with regard to Petitioner's plea. The court also stated that Petitioner had failed to establish "cause and prejudice" under Michigan Court Rule 6.508(D)(3). *See People v. Leonard*, No. 07-24234-01-FC (Wayne Cty Cir. Ct. Oct. 25, 2013) (ECF No. 10-7).[4] Petitioner appealed the trial court's decision through counsel, but the Michigan Court of Appeals denied leave to appeal because Petitioner had failed to carry his burden of establishing entitlement to relief under Rule 6.508(D). *See People v. Leonard*, No. 319114 (Mich. Ct. App. Jan. 15, 2014).

---

Mich. Ct. R. 6.508(D).

[4] The motion was signed on October 9, 2013, *see* ECF No. 10-7, but it was entered on the state court's docket on October 25, 2013, *see* ECF No. 10-1.

Petitioner raised the same two claims and two new issues[5] in a *pro se* application for leave to appeal in the Michigan Supreme Court. In lieu of granting leave to appeal, the state supreme court remanded Petitioner's case to the Michigan Court of Appeals for consideration of Petitioner's appellate application under the standard applicable to direct appeals. The supreme court stated that Petitioner had been deprived of his direct appeal by appellate counsel's ineffective assistance, namely, counsel's failure to locate the correctional facility where Petitioner was incarcerated. The supreme court did not retain jurisdiction. *See People v. Leonard*, 497 Mich. 852 (2014).

On remand, the Michigan Court of Appeals denied Petitioner's application for leave to appeal "for lack of merit in the grounds presented." *See People v. Leonard*, No. 319114 (Mich. Ct. App. Nov. 4, 2014). Petitioner did not appeal that decision to the Michigan Supreme Court. *See* Resp't Mot. to Dismiss Pet. for Writ of Habeas Corpus, Ex. A (ECF No. 9).

## C.  The Habeas Petitions

On October 5, 2015, Petitioner challenged his state convictions in a federal habeas corpus petition. He claimed that his trial attorney was ineffective for advising him to plead guilty because his state sentence would be comparable to his federal sentence of seventeen years.

---

[5]  The new issues alleged that (1) the government agent who was the victim of the crimes induced Petitioner to commit the crimes and (2) Petitioner's appellate attorney was ineffective.

The State argued in a responsive pleading filed on April 28, 2016, that Petitioner had procedurally defaulted his claim by failing to seek full appellate review of his claim in the Michigan Supreme Court following the remand to the Michigan Court of Appeals.

On June 9, 2016, Petitioner moved to voluntarily dismiss his habeas petition without prejudice. He did not give a reason for his motion, nor explain what he intended to do next. On approximately the same date, however, Petitioner submitted an application for leave to appeal in the Michigan Supreme Court. On June 14, 2016, the Michigan Supreme Court returned his pleading unfiled because it was untimely, as it was received more than fifty-six days after the lower state court's decision from November 2014. *See* Resp't Mot. to Dismiss Pet. for Writ of Habeas Corpus, Ex. B (ECF No. 9).

On August 17, 2016, this Court granted Petitioner's motion to voluntarily dismiss his first habeas petition without prejudice. In the same order, the Court informed Petitioner that, if he wished to seek federal habeas relief after exhausting his state-court remedies, he should file a new habeas petition. *See Leonard v. Schuette,* No. 15-13627 (E.D. Mich. Aug. 17, 2016).

Petitioner did not pursue any additional state-court remedies after this Court dismissed his first habeas petition, and on November 20, 2016, he commenced this action. He claims as grounds for relief that (1) he was denied effective assistance of trial counsel, (2) his convictions were obtained in violation of the protection against double jeopardy, (3) he was denied his right of appeal, and (4) his convictions were obtained by a guilty plea which was unlawfully induced or involuntarily made. As noted above, the State filed a motion to dismiss the petition on the basis that the petition was not filed

8

within the applicable statute of limitation. Petitioner replied to the State's motion by filing a motion urging the Court to proceed with his case and to grant his petition.

## II. Analysis

### A. The Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a one-year period of limitations for state prisoners to file their federal habeas corpus petitions. *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)); *Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016) (citing § 2244(d)(1)), *cert. denied sub nom. Woods v. Holbrook*, 137 S. Ct. 1436 (2017). The limitations period runs from the latest of the following four dates:

> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). "AEDPA also contains a tolling provision, which specifies that '[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.' " *Holbrook*, 833 F.3d at 615 (quoting 28 U.S.C. § 2244(d)(2)).

Petitioner has not alleged that the State created an impediment to filing a timely habeas petition, and he is not relying on a newly recognized constitutional right or on newly discovered facts. *Cf.* 28 U.S.C. § 2244(d)(1)(B)-(D). Consequently, his convictions became final at "the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

> For petitioners who pursue direct review all the way to [the Supreme] Court, the judgment becomes final at the "conclusion of direct review"— when [the Supreme] Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in [the Supreme] Court, or in state court, expires.

*Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

Petitioner did not pursue a direct appeal from his convictions, but, as previously explained, the Michigan Supreme Court determined that Petitioner was deprived of his direct appeal as a result of ineffective assistance of counsel. *See People v. Leonard*, 497 Mich. at 852. Accordingly, the Michigan Supreme Court remanded Petitioner's case to the Michigan Court of Appeals for consideration of Petitioner's appeal under the standard applicable to direct appeals.

Subsequently, on November 4, 2014, the Michigan Court of Appeals reviewed Petitioner's appellate application under the standard applicable to direct appeals and denied leave to appeal for lack of merit in his grounds for relief. Petitioner failed to appeal that decision to the Michigan Supreme Court within fifty-six days, as required by Mich. Ct. R. 7.305(C)(2)(a). Therefore, his convictions became final on December 30, 2014, when the fifty-six-day deadline expired for filing an appeal in the Michigan

Supreme Court. *Gonzalez*, 565 U.S. at 150. The statute of limitations began to run on the following day.

Nine months and a few days later – on October 5, 2015 – Petitioner filed a timely habeas corpus petition in this Court. The one-year limitations period came to an end roughly three months later in January of 2016. On June 9, 2016, Petitioner moved to dismiss his petition, and on August 17, 2016, the Court dismissed the petition without prejudice.

Petitioner returned to this Court and filed his present petition on November 20, 2016, but, by then, the one-year statute of limitations had run on his claims. As explained in *Duncan v. Walker*, 533 U.S. 167, 181 (2001), a federal habeas corpus petition "is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)." Consequently, the limitations period did not stop running during the pendency of Petitioner's first habeas petition. *Id*. at 181-82. Simply stated, *Duncan*, "makes clear that the federal habeas statutes do not toll the statute of limitations while the federal habeas petition is pending." *Griffin v. Rogers*, 308 F.3d 647, 651 (6th Cir. 2002). Petitioner could not validly re-file his petition after the Court dismissed his first petition because the statute of limitations expired while the first petition was pending. *Palmer v. Carlton*, 276 F.3d 777, 780 (6th Cir. 2002).

The Supreme Court's decision in *Duncan* does not foreclose the possibility of equitable tolling when a habeas petitioner files a timely habeas petition only to have the petition subsequently dismissed for failure to exhaust state remedies. "Justice Stevens

indicated that although statutory tolling was not available [under § 2244(d)(2)], equitable tolling remained an option." *Griffin*, 308 F.3d at 651.[6]

In Petitioner's case, however, the habeas petition would be untimely even if the Court tolled the limitations period for the entire time that Petitioner's first petition was pending in this Court. The limitations period ran from December 31, 2014 (the day after the deadline expired for seeking leave to appeal in the Michigan Supreme Court after the

---

[6] In Justice Stevens' words,

a federal court might very well conclude that tolling is appropriate based on the reasonable belief that Congress could not have intended to bar federal habeas review for petitioners who invoke the court's jurisdiction within the 1–year interval prescribed by AEDPA.

> . . . [F]ederal courts may well conclude that Congress simply overlooked the class of petitioners whose timely filed habeas petitions remain pending in district court past the limitations period, only to be dismissed after the court belatedly realizes that one or more claims have not been exhausted. . . . As a result, equitable considerations may make it appropriate for federal courts to fill in a perceived omission on the part of Congress by tolling AEDPA's statute of limitations for unexhausted federal habeas petitions.

*Duncan*, 533 U.S. at 183–84 (Stevens, J., concurring in part and concurring in the judgment). The Sixth Circuit Court of Appeals

> has endorsed Justice Stevens's concurrence. In *Palmer v. Carlton*, 276 F.3d 777 (6th Cir. 2002), [the Sixth Circuit] ruled that a petitioner whose original petition was filed within the one-year statute of limitations, but whose petition, after the statute of limitations had expired, was voluntarily dismissed without prejudice to allow exhaustion of state remedies, could return to federal court following exhaustion provided that the petitioner filed for state court relief and returned to federal court within "a brief, reasonable time limit." *See id.* at 781.

*Griffin*, 308 F.3d at 651-52.

remand to the Michigan Court of Appeals) to October 5, 2015 (the date on which Petitioner filed his first petition). This time period was 278 days. The limitations period also ran from August 18, 2016 (the day after the Court dismissed the first petition) to November 20, 2016 (the date Petitioner filed his second petition). This time period was 94 days. The statute ran a total of 372 days or more than one year, even if the limitations period were tolled for the entire time that Petitioner's first petition was pending in federal court.

### B. Equitable Tolling

Petitioner seeks equitable tolling of the limitations period for an additional reason: he was confined to a special housing unit within a federal prison from March 2, 2016, until April of 2017. He alleges that his confinement in the special housing unit and his lack of assistance from an attorney made it difficult for him to file documents in a timely manner and to rebut the State's answer to his first petition because he had limited access to state-law materials, a computer, and a typewriter. He also alleges that he would have known he could return to the Michigan Supreme Court if he had been given access to legal materials. He argues that these are extraordinary circumstances which justify equitable tolling.

A habeas petitioner "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "[T]o qualify as 'extraordinary circumstances,' the petitioner must show more than just his status as pro se

or his limited access to a law library." *Jones v. United States*, 689 F.3d 621, 627 (6th Cir.

2012) (citing *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751 (6th Cir. 2011)).

The Sixth Circuit

> has held that combinations of illiteracy, *pro se* status, lack of access to legal
> materials, ignorance of the law, and reliance on legal assistance from others
> do not amount to extraordinary circumstances. *See, e.g., Keeling v.*
> *Warden, Lebanon Corr. Inst.,* 673 F.3d 452, 464 (6th Cir. 2012) ("[W]e
> note that Keeling's pro se status and lack of knowledge of the law are not
> sufficient to constitute an extraordinary circumstance."); *Hall v. Warden,*
> *Lebanon Corr. Inst.,* 662 F.3d 745, 750–52 (6th Cir. 2011) (stating that a
> combination of a prisoner's *pro se* status, limited law-library access, and
> inability to access trial transcripts did not amount to an extraordinary
> circumstance); *Cobas v. Burgess,* 306 F.3d 441, 444 (6th Cir. 2002)
> (finding that a petitioner is not entitled to equitable tolling on the basis of
> his ignorance of the law and legal process, his lack of education, his
> functional illiteracy, or his reliance on prison paralegals).

*Tanner v. Yukins*, 776 F.3d 434, 446 (6th Cir. 2015) (Smith Gibbons, C.J., dissenting);

*see also Andrews v. United States*, No. 17-1693, 2017 WL 6376401, at *2 (6th Cir. Dec.

12, 2017) (unpublished decision noting that "general allegations of placement in

segregation and lack of access to legal materials are not exceptional circumstances

warranting equitable tolling).

    The Court concludes from *Tanner* and *Andrews* that, even assuming Petitioner was

diligent in pursuing his rights, his confinement in the special housing unit was not an

extraordinary circumstance preventing him from pursuing his claims in a timely manner.

Therefore, he is not entitled to equitable tolling of the limitations period beyond what

may be permitted under *Duncan*.

### C. Actual Innocence

Actual innocence, if proved, serves as a gateway through which habeas petitioners may pass when the impediment to consideration of the merits of their constitutional claims is expiration of the statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). The Supreme Court has cautioned, however, "that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' " *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Petitioner pleaded guilty to the crimes for which he is incarcerated, and he does not purport to have new evidence of actual innocence. Therefore, he is not entitled to pass through the "actual innocence" gateway and have his claims heard on the merits. "AEDPA's time limitations apply to the typical case in which no allegation of actual innocence is made." *Id.* at 394.

### D. The Merits

Having reviewed the state-court record, the Court finds for the reasons given below that, even if Petitioner were entitled to equitable tolling or had alleged a credible claim of actual innocence, his claims lack substantive merit.[7] In reviewing the claims on

---

[7] **Error! Main Document Only.**The Court reaches this conclusion without regard to whether Petitioner failed to exhaust state remedies for all his claims or procedurally defaulted the claims, because the exhaustion requirement and the procedural-default doctrine are not jurisdictional. *See Castille v. Peoples*, 489 U.S. 346, 349 (1989) (stating that exhaustion of state remedies is not a jurisdictional requirement); *Trest v. Cain*, 522 U.S. 87, 89 (1997) (stating that a procedural default is not a jurisdictional matter).

their merits, the Court notes that Petitioner is entitled to habeas relief only if the state

courts' adjudications of his claims on the merit

> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d). To prevail on the claims that no state court adjudicated on the

merits, Petitioner must show "that he is in custody in violation of the Constitution or laws

or treaties of the United States." 28 U.S.C. § 2254(a).

### 1. Claim One: Ineffective Assistance of Trial Counsel

In his first claim, Petitioner alleges that his trial attorney rendered ineffective

assistance by advising him to plead guilty on the basis that he would receive a sentence

comparable to his federal sentence of seventeen years. Petitioner alleges that he would

have gone to trial had it not been for his attorney's advice.

A defendant is entitled to effective assistance of counsel during plea negotiations.

*Lafler v. Cooper*, 566 U.S. 156, 162 (2012). Pursuant to *Strickland v. Washington*, 466

U.S. 668 (1984), a defendant must show "that counsel's performance was deficient" and

"that the deficient performance prejudiced the defense." *Id*. at 687. "Unless a defendant

makes both showings, it cannot be said that the conviction . . . resulted from a breakdown

in the adversary process that renders the result unreliable." *Id*.

In the context of a guilty plea, a deficient performance is one that falls below an

objective standard of reasonableness or is outside the range of competence demanded of

attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985). The "prejudice" prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. The defendant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

The evidence against Petitioner was overwhelming, and it is unlikely that he would have been acquitted if he had gone to trial. Moreover, defense counsel was successful in having Petitioner's state sentence run concurrently with his federal sentence and in having Petitioner serve at least a portion of his state sentence in a federal prison. If Petitioner had gone to trial and been convicted, his state sentence could have run consecutively to his federal sentence. By heeding his attorney's advice and pleading guilty, Petitioner avoided consecutive sentences and the possibility of spending a significantly longer time in prison. Trial counsel's advice to plead guilty did not amount to deficient performance.

Furthermore, Petitioner alleged in his motion for relief from judgment that he decided to plead guilty because he did not think his attorney would represent him zealously at trial and he feared being sentenced to life imprisonment following a trial. *See* Mot. for Relief from J., p. 2 (ECF No. 10-6). These allegations indicate that Petitioner's guilty plea was based on considerations other than defense counsel's alleged statement to Petitioner that his state sentence would be comparable to his federal sentence.

Petitioner has failed to show that trial counsel was constitutionally ineffective. Thus, he has no right to relief on the basis of his first claim.

## 2. Claim Two: Violation of the Double Jeopardy Clause

Petitioner alleges next that his state convictions were obtained in violation of his right not to be placed in double jeopardy. Petitioner points out that he was charged and sentenced in his federal case before he was charged and sentenced in the state case for the same incident.

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST., amend V. The Clause "is applicable to the States through the Fourteenth Amendment." *Benton v. Maryland*, 395 U.S. 784, 787 (1969). It

> "protects against a second prosecution for the same offense after acquittal. It [also] protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."

*Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). "But under what is known as the dual-sovereignty doctrine, a single act gives rise to distinct offenses—and thus may subject a person to successive prosecutions—if it violates the laws of separate sovereigns." *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1867 (2016). Stated differently,

> two prosecutions . . . are not for the same offense if brought by different sovereigns — *even when those actions target the identical criminal conduct through equivalent criminal laws*. See, *e.g., United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314 (1922). . . . The Double Jeopardy Clause thus drops out of the picture when the "entities that seek

18

> successively to prosecute a defendant for the same course of conduct [are] separate sovereigns." *Ibid.*

*Id*. at 1870 (quoting *Heath v. Alabama*, 474 U.S. 82, 88 (1985)) (emphasis added).

"[T]he States are separate sovereigns from the Federal Government . . . ." *Id*. at 1871.

Therefore, Petitioner's right not to be placed in double jeopardy was not violated by his state and federal prosecutions, and his second claim lacks merit.

### 3. Claim Three: Denial of the Right to Appeal

Petitioner asserts that he was denied his right of appeal when his appellate attorney failed to pursue a timely direct appeal in his behalf. The Michigan Supreme Court agreed that Petitioner was deprived of a direct appeal by appellate counsel's ineffectiveness, but the State Supreme Court rectified the problem by remanding Petitioner's case for consideration of Petitioner's claims under the standards applicable to direct appeals. Thus, the initial error of depriving Petitioner of his direct appeal was harmless, and Petitioner's claim lacks merit.

### 4. Claim Four: Involuntary Guilty Plea

In his fourth and final claim, Petitioner alleges that his conviction was obtained by an involuntary or unlawfully induced guilty plea. According to Petitioner, his attorney implied that he would receive a sentence at the low end of his sentencing guidelines if he pleaded guilty.

To be valid, a guilty plea must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Courts must consider all the relevant

circumstances when determining whether a plea was voluntary. *Id*. at 749. Among the factors to be considered are whether the defendant appreciated the consequences of his waiver of constitutional rights, whether he waived his rights without being coerced to do so, and whether he understood the rights that he was surrendering by pleading guilty. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009).

At Petitioner's plea proceeding, the trial court informed Petitioner of the charges against him and the maximum penalty for the crimes. *See* Plea Tr., pp. 4-6 (ECF No. 10-3). Defense counsel explained the plea agreement on the record, and Petitioner stated that nobody had promised him anything other than what was stated on the record. *Id.*, pp. 3-4, 7. Petitioner also stated that he understood the rights he was waiving by pleading guilty, and he assured the trial court that no one had pressured him to make him plead guilty. *Id.*, pp. 8-9. He then provided a factual basis for his plea. *Id.*, pp. 9-15.

Petitioner's "[s]olemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), and the fact that his guilty plea may have been motivated in part by fear of a more severe sentence if he went to trial does not render his plea compelled and invalid, *Brady*, 397 U.S. at 751. The Court concludes from all the relevant circumstances that Petitioner's plea was voluntary, knowing, and intelligent. He has no right to relief on the basis of his fourth claim.

### 5. The Prosecutor's Conduct at Sentencing

In his motion to have the Court grant his petition, Petitioner raises an additional claim about the prosecutor's conduct. Petitioner alleges that the prosecutor misrepresented the facts at his sentencing when she stated that the gun discharged during

the incident with the ATF agent.  This argument is not properly before the Court, and the Court need not address it, because Petitioner first raised the argument in his reply to the State's responsive pleading.  *Murphy v. Ohio*, 551 F.3d 485, 502 (6th Cir. 2009); *Tyler v. Mitchell,* 416 F.3d 500, 504 (6th Cir. 2005).

### III.  Conclusion

The habeas petition is time-barred, and the state courts' adjudication of Petitioner's claims about his trial attorney and the voluntariness of his guilty plea did not result in decisions that were contrary to, or unreasonable applications of, Supreme Court precedent.  As for the claims that no state court adjudicated on the merits, Petitioner has not shown that he is "in custody in violation of the Constitution."  28 U.S.C. § 2254(a).  Accordingly, the State's motion to dismiss the habeas petition (ECF No. 9) is granted, Petitioner's motion to have the Court grant his habeas petition (ECF No. 11) is denied, and the habeas petition (ECF No. 1) is dismissed with prejudice.

### IV.  Certificate of Appealability

Petitioner may not appeal this opinion without first obtaining a certificate of appealability, 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1), and a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

For the reasons given above, reasonable jurists would not disagree with the Court's resolution of Petitioner's claims. Reasonable jurists also would not conclude that Petitioner's claims deserve encouragement to proceed further. Accordingly, the Court declines to grant a certificate of appealability. The Court nevertheless grants Petitioner permission to appeal this decision *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).


Dated: March 1, 2018                              s/Paul D. Borman
                                                  Paul D. Borman
                                                  United States District Judge



CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 1, 2018.

                                                  s/D. Tofil
                                                  Deborah Tofil, Case Manager